**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JOHN S. WILDER,

        Plaintiff-Appellee,

v.

KEVIN P. TURNER,

        Defendant-Appellant.

No. 06-1092

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(02-CV-732-WYD-CBS)**

_____

John W. Suthers, Attorney General; Daniel D. Domenico, Solicitor General; Frederick Haines, First Assistant Attorney General; Patricia D. Herron, Assistant Attorney General; Kathleen Spalding, Assistant Attorney General; Denver, Colorado, for Defendant-Appellant.

Paul Grant, Centennial, Colorado, for Plaintiff-Appellee.

_____

Before **KELLY**, **BALDOCK**, and **GORSUCH**, Circuit Judges.[*]

_____

**BALDOCK**, Circuit Judge.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This civil rights action arises out of a traffic stop and arrest of Plaintiff for allegedly driving under the influence of alcohol (DUI). We are asked to decide whether an officer has probable cause to arrest a driver that refuses to submit to a roadside sobriety test after the officer observes certain indicia of alcohol consumption. The district court said no and denied the officer qualified immunity. A jury subsequently returned a verdict against the officer. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold the officer had probable cause to arrest the driver on suspicion of DUI, and is, therefore, entitled to qualified immunity.

I.

The relevant historical facts are undisputed. On the evening of November 30, 2001, Defendant Kevin Turner, a Colorado highway patrolman, stopped Plaintiff John Wilder's vehicle for traveling 57 mph in a 50 mph zone. Officer Turner approached the vehicle, asked Wilder for his documentation, and explained the reason for the stop. In the course of the initial encounter, Officer Turner noticed an odor of alcohol on Wilder's breath and observed Wilder had pinkish and watery eyes, a flushed face, and spoke unusually slow and deliberately. Officer Turner asked Wilder how much alcohol he had to drink. Wilder candidly admitted he had a glass of wine ten to fifteen minutes earlier. The officer asked Wilder if he had anything else to drink. Wilder responded he did not. Initially, Wilder's demeanor was argumentative, but eventually became cooperative.[1]

---

[1] While not denying he was speeding, Wilder attempted to justified his conduct by claiming he was forced to pass a vehicle that, in his opinion, was traveling unreasonably slow, but suddenly sped up when Plaintiff was in the process of passing it.

2

Officer Turner asked Wilder to exit the vehicle and walk to the rear. The officer noticed Wilder's exit was normal, and that Wilder did not have difficulty walking. The officer also noticed Plaintiff's clothing was orderly. The officer asked Wilder if he would perform a roadside sobriety test. Wilder declined and asked the officer: "What have I done to deserve this." The officer explained he observed certain indicia of alcohol consumption and needed to investigate further. Officer Turner asked Wilder a second time if he was willing to perform a roadside sobriety test. Wilder replied: "I really don't want to." The officer then arrested Wilder on suspicion of DUI.[2] At that point, Wilder told the officer he had a weapon in his vehicle for which he had a permit. While searching the vehicle, the officer found a half-empty, single-serving bottle of wine on the front passenger seat, which Wilder covered with newspapers before the stop.

After Officer Turner advised Wilder of his rights, Wilder asked to be given a blood alcohol test.[3] Officer Turner drove Wilder to a nearby medical center where he received a blood test. The officer charged Wilder with DUI in violation of Colo. Rev. Stat. § 42-4-

---

[2] After the arrest, Plaintiff apparently changed his mind and agreed to take a roadside sobriety test, but the officer informed Plaintiff he was under arrest.

[3] Colo. Rev. Stat. § 42-4-1301.1(2)(a)(1), provides:

Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of such person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI[.]

3

1301(1)(a), as well as unlawful possession of a weapon while intoxicated in violation of Colo. Rev. Stat. § 18-12-106(1)(d). The officer released Wilder after Wilder posted a personal recognizance bond. The blood test, which the officer received a few days later, revealed Wilder's alcohol-blood content was .014%, well below the level at which intoxication is presumed under Colorado law. As a result, the Rio Grande County Court dismissed all charges against Plaintiff.

Wilder thereafter brought this 42 U.S.C. § 1983 action against Officer Turner alleging the officer violated his Fourth Amendment right to be free from unreasonable searches and seizures when the officer (1) arrested him without probable cause, (2) seized his gun without probable cause, and (3) presented charges to the district attorney without probable cause. Officer Turner moved for summary judgment asserting a defense of qualified immunity. The officer argued he had probable cause to arrest Plaintiff because he observed several indicia of excessive alcohol consumption, and because Plaintiff refused to submit to the roadside sobriety test. The district court denied the officer's motion.

The court relied extensively on the Colorado Supreme Court's decision in People v. Carlson, 677 P.2d 310 (Colo. 1984), to conclude "a reasonable peace officer in [Officer] Turner's position would not believe he had probable cause *under Colorado law* to arrest Plaintiff for DUI." (emphasis added). Carlson held a roadside sobriety test constitutes a full search and, therefore, before an officer can lawfully ask an individual to submit to a roadside sobriety test, the officer must have probable cause to believe the driver is under the influence of alcohol. See Carlson, 677 P.2d at 317-318. The district court explained the indicators of

4

alcohol consumption Officer Turner observed did not, as a matter of Colorado law, create probable cause to arrest. Under Carlson, the court explained, the indicators Officer Turner observed were not enough to establish probable cause, but rather only reasonable suspicion. The court further explained that refusing to take a field sobriety test cannot create probable cause to arrest because under Carlson, an officer may lawfully ask an individual to perform a field sobriety test only if the officer has probable cause to believe the suspect is intoxicated.

Following a two-day trial, a jury returned a verdict in Officer Turner's favor. Wilder timely moved for a new trial pursuant to Fed. R. Civ. P. 59(a) arguing Officer Turner's counsel engaged in persistent misconduct that affected and prejudiced the jury. The court agreed and granted a new trial. The court cursorily explained that "numerous deviations of defense counsel from acceptable norms are so flagrant that I am left with the abiding sense that the Plaintiff did not receive a fair trial." Prior to the second trial, Officer Turner renewed his motion for summary judgment again asserting a defense of qualified immunity. The court, however, denied the motion as untimely. The case proceeded to trial.

At the close of Plaintiff's case and again at the close of all the evidence, Officer Turner moved for a judgment as a matter of law under Fed. R. Civ. P. 50. The officer again argued that during the stop he observed several indicators of excessive alcohol consumption, and that his observations coupled with Plaintiff's refusal to take a field sobriety test amply supported a finding of probable cause to arrest Wilder for DUI. The court denied the motion. The court explained the evidence on the record, such as Wilder's ability to exit the vehicle and walk normally, his cooperative attitude, and his orderly clothes, could support a finding

5

the officer lacked probable cause to arrest Wilder for DUI.

This time, the jury returned a verdict for Wilder and awarded him $1 million dollars in damages. Officer Turner again moved for a judgment as a matter of law or in the alternative for relief from judgment or for a new trial pursuant to Fed. R. Civ. P. 50(b) and 59. Once more the officer asserted a defense of qualified immunity arguing he had probable cause to arrest Wilder based on his observations and Plaintiff's refusal to cooperate with the investigation. The court denied the officer's post-trial motions reasoning the jury could reasonably infer a lack of probable cause from the evidence and that the officer arrested Plaintiff for an unlawful reason, i.e., refusing to take a roadside sobriety test. This appeal followed.

II.

Whether Officer Turner is entitled to qualified immunity is a legal question we review de novo. See Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). When an officer asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. See id. at 1114. Initially, the plaintiff must show the officer's conduct violated a constitutional right: "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the officer's conduct did not violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity. See id.

6

Throughout the course of this litigation, Plaintiff's position has been that Officer Turner's actions violated his Fourth Amendment right to be free from unreasonable seizures because the officer's observations and Plaintiff's refusal to take a field sobriety test were insufficient to establish probable cause to arrest him on suspicion of DUI. Agreeing with Plaintiff, the district court denied Officer Turner's qualified immunity defense at each stage of the litigation. Deriving the legal framework for its probable cause determination exclusively from Colorado case law, the court concluded (1) the officer's observations were insufficient to establish probable cause to arrest for allegedly driving while under the influence, and (2) because probable cause must exist before an officer may lawfully ask an individual to participate in a field sobriety test, refusing to take the test cannot itself establish probable cause to arrest.

A.

When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff. See e.g., Atwater v. Lago Vista, 532 U.S. 318, 322 (2001) ("[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense. See United States v. Stephenson, 452 F.3d 1173, 1178 (10th Cir. 2006). Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity. See

7

Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983); see also United States v. Jurado-Vallejo, 380 F.3d 1235, 1239 (10th Cir. 2004) (Because the law only demands a "fair probability," we do not require "greater proof–certainly not conclusive proof of any particular factor establishing probable cause."). We determine probable cause from the totality of the circumstances taking into account both inculpatory as well as exculpatory evidence. See Stephenson, 452 F.3d at 1178.

Of course a "violation of state law cannot give rise to a claim under Section 1983." Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1164 (10th Cir. 2003). "Section 1983 does not . . . provide a basis for redressing violations of *state law*, but only for those violations of *federal law* done under color of state law." Jones v. City and County of Denver, 854 F.2d 1206, 1209 (10th Cir. 1988). "While it is true that state law with respect to arrest is looked to for guidance as to the validity of the arrest since the officers are subject to those local standards, it does not follow that state law governs." Wells v. Ward, 470 F.2d 1185, 1187 (10th Cir. 1972). Nor, perhaps more importantly, are we bound by a state court's interpretation of federal law–in this case the Fourth Amendment. "It is beyond cavil that we are not bound by a state court interpretation of federal law" regardless of our jurisdictional basis. Grantham v. Avondale Indus., Inc., 964 F.2d 471, 473 (5th Cir. 1992) (citing cases); accord RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 n.1 (7th Cir. 1997). The right Plaintiff claims Officer Turner violated in this case arises under federal law. And the officer's claim to qualified immunity is a federal defense. Understandably, then, the standard governing the officer's defense must be federal law. See id. Applying the correct standard

8

to review Officer Turner's qualified immunity defense, we conclude the Tenth Circuit

precedent of Summers v. Utah, 927 F.2d 1165 (10th Cir. 1991) controls.

B.

In Summers, the driver of a vehicle challenged the illegality of his arrest under § 1983

after his DUI charge was dismissed. We summarily rejected the driver's challenge holding

probable cause for an arrest arose when the officer detected the scent of alcohol on the driver

who subsequently refused to perform a field sobriety test:

> With respect to the legality of plaintiff's arrest, the magistrate concluded that the surrounding circumstances provided [the officer] with the requisite probable cause. *The undisputed facts regarding plaintiff's operation of his vehicle, the officer's scent of alcohol emanating from the vehicle and plaintiff's refusal to take a field sobriety test substantiate the magistrate's conclusion.* We agree that plaintiff, who only notes in this regard that his DUI charge was later dismissed, has failed to demonstrate that his arrest by [the officer] was improper. Since probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution such as dismissal of charges.

Id. at 1166 (emphasis added) (internal citations omitted).

Recently, in Miller v. Harget, 458 F.3d 1251 (11th Cir. 2006), the Eleventh Circuit

relied on Summers to reach a like conclusion. In Miller, the court held that an officer had

probable cause to arrest an individual on suspicion of DUI where (1) the officer witnessed

the individual driving a vehicle, (2) the officer smelled alcohol emanating from the vehicle's

interior, and (3) the individual refused to take a breathalyzer test. Citing Summers with

approval, the Court explained:

> Whether or not [the officer] had probable cause to arrest Mr. Miller because the officer smelled alcohol coming from the vehicle, the officer did have reasonable suspicion. He reasonably detained Mr. Miller in order to investigate whether he had been driving under the influence. *From this detention, probable cause developed, justifying Mr. Miller's arrest, because Mr. Miller refused to take a breathalyzer test.*

Id. at 1259-60 (emphasis added) (internal citations omitted).

In this case, Officer Turner observed several indicia of Plaintiff's alcohol consumption including a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements. Under the totality of the circumstances, the officer's observations amply support a conclusion that the officer had an objectively reasonable and articulable suspicion of criminal activity to justify detaining Plaintiff for further investigation. See id. at 1259; see also United States v. Neumann, 183 F.3d 753, 756 (8th Cir.1999) (holding detection of alcohol on a driver's breath during a routine traffic stop gave rise to reasonable suspicion). From this detention, probable cause developed when twice Plaintiff refused to participate in a field sobriety test. See Summers, 927 F.2d at 1166; see also Miller, 458 F.3d 1259.

A prudent officer could reasonably conclude from Plaintiff's refusal to participate in a field sobriety test coupled with the observation of several indicators of excessive alcohol consumption that Plaintiff was under the influence of alcohol. See Miller, at 1260. A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and "an easy opportunity to end a detention before it matures into an arrest." Id.; see also Rogala v. District of Columbia, 161 F.3d 44, 52 (D.C. Cir. 1998) (holding that

10

only reasonable suspicion is required to conduct a field sobriety test because it is such a minimal intrusion on the driver). A reasonable officer in Officer Turner's position could view Plaintiff's refusal to submit to a field sobriety test as indicative of an intent to conceal evidence of guilt. As Miller correctly notes:

> Any other conclusion would tie the hands of law enforcement in their efforts to keep intoxicated drivers off the streets. If a driver refused to submit to a test after an officer smelled alcohol, the officer would have no choice but to let him or her go, absent other evidence the driver had been drinking.

Miller, 458 F.3d at 1260. A contrary conclusion would simply allow a driver to "escape arrest simply by refusing to cooperate." Id.

Because Plaintiff failed to carry his burden to show the officer violated his Fourth Amendment rights, the judgment of the district court is reversed. This cause is remanded with instructions to enter judgment in favor of Officer Turner on the basis of qualified immunity.

REVERSED AND REMANDED.